## The President &c. of the DEDHAM BANK *versus* JABEZ CHICKERING *et al.*

The charter of a bank required the cashier to give bond with two sureties, to the satisfaction of the board of directors, for the faithful discharge of his duties. *Held,* that where the board, by a vote, approved of two persons as sureties in a bond to be given, and a bond was afterwards found in the possession of the president, duly executed by the cashier and such sureties, there was a sufficient acceptance of it by the corporation.

A person was elected cashier of a bank in March 1814, when it was first organized, and again in October 1814, 1815 and 1817, by directors chosen annually, and he continued to act as cashier from his first election until 1823, when he committed a breach of duty. *Held,* that a bond given by him with sureties upon his first election, for the faithful performance of his duties " so long as he should continue in said office," extended to this breach of duty, it not appearing, either in the bond itself, or in the charter, records or regulations of the bank, that the office of cashier was an annual office.

DEBT on a bond executed by Chickering as principal and by Jeremiah S. Boies and William Dean (since deceased) as sureties, for 20,000 dollars, dated the 15th of April, 1814, conditioned that Chickering " shall well and faithfully execute and perform all the duties of cashier of said Dedham Bank, to which office he has been duly appointed, without fraud, covin, concealment, neglect or delay, so long as he shall continue in said office ; and when a successor shall be duly appointed, shall deliver up to him, on request by the proper authority, all books, papers and moneys, and every article and thing belonging to said bank under his care.

Chickering was defaulted.

Pleas by the defendant Boies, 1. *Non est factum:* — 2. A general performance by Chickering during his continuance in

---

the office of cashier by virtue of the appointment mentioned in the condition.

Replication to the second plea, alleging his continuance in office from the 14th of April, 1814, to a day in November, 1823, and assigning for a breach of the condition, that on that day he fraudulently absconded without delivering up the books, papers, moneys, &c., entrusted to his care.

Rejoinder, that he did not continue to be, and was not in the office of cashier by virtue of the appointment mentioned in the condition, until and at the time when he is alleged to have absconded ; and issue joined thereon.

At the trial the plaintiffs produced the bond, and the defendant admitted that it was signed and sealed at his house in Milton by Chickering and himself, and that Chickering carried it away with him.   E. Fisher, formerly a clerk and now cashier of the bank, testified that he was applied to on behalf of Boies for a copy of the bond, and that upon application to the president of the bank he (Fisher) obtained from him the original bond.   The witness produced a book purporting to be the records of the proceedings of the directors of the bank, and a number of books containing lists of notes &c. proposed for discount at the meetings of the directors, at the foot of which lists were records of several votes and proceedings of the directors ; and he testified that these were the only records of the doings of the directors of which he had any knowledge.

The following are all the entries in these books, which affect the questions in this case.   First a record, without any date, at the head of the first page of one of the books, that Chickering made " oath that he would faithfully perform all the duties incumbent on him as cashier of the Dedham bank, and as secretary of the board of directors, so long as he shall continue in said offices."   The second entry was, that at a meeting of the directors on the 25th of March, 1814, Chickering " was chosen cashier of the bank," and that it was " voted, that the cashier of the bank for the time being be secretary of the board of directors."   The third, that at a meeting on the 3d of May, 1814, it was voted, " that Jeremiah S. Boies Esq of Milton, and Mr. William Dean of Dedham, be accepted as sufficient sureties in a bond to be given by the cashier for the

Dedham
Bank
*v.*
Chickering.

337

faithful discharge of the duties of that office," and 'that the officers of the bank shall receive such compensation for their services as under all circumstances shall be reasonable." The fourth, " Oct. 7th, 1814. The board of directors chosen by the stockholders of the Dedham bank at their annual meeting on Monday last, met ; when Willard Gay Esq. was reëlected president and Jabez Chickering was chosen cashier." The fifth, " Oct. 2, 1815. The board of directors chosen by the stockholders at their annual meeting this day met ; when Willard Gay Esq. was reëlected president of the board and Jabez Chickering was appointed cashier." The sixth, " Oct. 10, 1817, voted and appointed Jabez Chickering cashier, with salary of 800 dollars."

The jury were instructed, that the possession and production of the bond by the proper officer of the corporation, were evidence from which they might presume a delivery ; and that the legal operation of the bond extended to all the time in which Chickering held the office of cashier ; and that he must be considered as continuing in office by virtue of his appointment mentioned in the bond, until he absconded in 1823.

A verdict was taken for the plaintiffs, subject to the opinion of the Court upon the questions arising out of these instructions.

*Oct. 26th.*    *C. G. Loring* for the defendant. 1. Under the general issue there was no evidence of the bond's being delivered to, and accepted by, the plaintiffs. In general a bond can be accepted by an aggregate corporation, only by a writing or vote, or by an agent duly authorized by writing or vote. *Essex Turnpike Corp.* v. *Collins,* 8 Mass. R. 298 ; *Hayden* v. *Middlesex Turnpike Corp.* 10 Mass. R. 397 ; *Hallowell &c. Bank* v. *Hamlin,* 14 Mass. R. 180. Here the act of incorporation (*St.* 1813, *c.* 175, referring to *St.* 1811, *c.* 84) provides, that " the cashier, before he enters on the duties of his office, shall give bond with two sureties, to the satisfaction of the directors, in a sum not less than 20,000 dollars, with conditions for the faithful discharge of the duties of his office." [1]

---

[1] See Revised Stat. *c.* 36, § 27, in which it is enacted, that in no case shall the bonds of a cashier of a bank be taken for a less sum than 20,000 dollars nor for a greater sum than 50,000 dollars.

It would therefore not be necessary to call a meeting of all the stockholders to act upon the bond, but there ought to have been a meeting of the directors. The manner in which the corporation is to exercise its powers, being thus prescribed, is essential and must be strictly pursued. *Head* v. *Providence Ins. Co.* 2 Cranch, 127 ; *Beatty* v. *Marine Ins. Co.* 2 Johns. R. 109. The acceptance of the bond, partaking of the nature of a judicial as well as a ministerial act, required a vote of the board of directors. *Rex* v. *Forrest*, 3 T. R. 38 ; *Rex* v. *Hamstall Ridware*, ibid. 380. The assent of individual directors would not be binding on the corporation ; *Hartford Bank* v. *Hart*, 3 Day, 491 ; *Waterbury* v. *Clark*, 4 Day, 198 ; and we say that the directors could not delegate to the president the power to assent. The vote to accept Boies and Dean as sureties was not an acceptance of the bond ; it applied to a bond to be subsequently given, and could be nothing more than an agreement to accept. The case is the stronger, inasmuch as the bond in question con tains things not required by the statute. In the act estab lishing the Bank of U. S. there is a clause like the one above quoted, and in the case of that bank against Dandridge and others, in the Circuit Court of U. S., it was held by *Marshall* C. J. that the acceptance of the cashier's bond ought to be by a vote of the board of directors. The case is now pend- ing before the Supreme Court of the United States.[1]

2. The office of cashier was an annual office, and the votes of the directors show that they understood it to be such ; otherwise, why did they make a reëlection ? They themselves were chosen annually, and it is hardly to be supposed that they could invest the cashier with powers for a longer time. No one would become a surety, if he thought his responsibility would continue during the life of the cashier. If however the office was not an annual one, it was to be held during the pleasure of the directors, and when they elected Chickering a second time, he ceased to be in office under the first election. And in 1817 an essential alteration was made in the tenure of the office, the salary being then fixed at 800 dollars. On the

[1] See *United States Bank* v. *Dandridge*, 12 Wheat. 64, (6 Peters's Con- densed U. States Ct R. 440.)

Dedham
Bank
*v.*
Chickering.

339

ground that the office was either annual, or to be held during the pleasure of the directors, this bond did not extend to the acts of Chickering subsequent to his reëlection. *Arlington* v. *Merricke*, 2 Saund. 411 ; *Liverpool Waterworks Co.* v. *Atkinson*, 6 East, 507 ; *Wardens of St. Saviour's* v. *Bostock*, 2 New Rep. 175 ; *Hassell* v. *Long*, 2 Maule & Selw. 363 ; *United States* v. *Kirkpatrick*, 9 Wheat. 720 ; Bac. Abr. *Corporation, E,* 9.

B. *Gorham*, L. *Shaw*, and *Richardson*, for the plaintiffs. 1. The bond being duly executed and in the possession of the persons to be benefited and not requiring any thing to be done on their part, is to be considered as accepted ; and the burden is on the other party to show by affirmative evidence that it was delivered only as an escrow or with some other qualification. The law fixes the character of the bond to be given by a cashier, and the bond in suit was made conformably. Nothing was to be done by the directors but to approve of the sureties ; and when they did this in respect to a bond to be given, they referred to the bond required by law. After they had voted that these sureties should be received, the acceptance of the bond was a mere ministerial act, which might be done by any one of the directors. It is clear that it was taken for the benefit of the corporation, and their subsequent assent to the act of their agents, which is manifested by bringing this action, is equivalent to an antecedent authority. *Monumoi Beach* v. *Rogers*, 1 Mass. R. 159. From the date of the bond compared with that of the vote, it might be presumed by a jury, that not only were the sureties approved by the directors, but that also the bond was exhibited to them and accepted.

2. The extent of the obligation of the surety was a matter of contract, and in binding himself for an indefinite period he relied on the integrity of the principal, and the probability that the obligee would not continue him in office when the surety would be likely to suffer from his misconduct. Upon a bond for the good behaviour of a person so long as he shall continue in office, the surety is responsible until the resignation or removal of the principal, except 1. where there is a recital limiting the term of office, as in *Arlington* v. *Merricke*, and *Stibbs*

*v. Clough*, 1 Str. 227. — Or 2. where the term is limited by law, as in *St. Saviour's* v. *Bostock*, and *Bigelow* v. *Bridge*, 8 Mass. R. 275. In *United States* v. *Kirkpatrick* the court say that the office would have terminated at the end of a session of Congress, and that the second appointment was not a continuance of the first, because it was for a longer time, and because the duties of the office were increased. In *Hassell* v. *Long* the question was whether the bond of a collector of taxes was so worded as to connect itself with a subsequent appointment, and the court, not finding the point clear, determined that it was limited to the first appointment. The office here was not by law an annual office, notwithstanding the cashier was chosen by annual officers. *Curling* v. *Chalklen*, 3 Maule & Selw. 502 ; *Anderson* v. *Longden*, 1 Wheat. 85. — Or, 3. where there is a change in regard to the parties, as in the case of a bond to a firm which afterwards admits a new partner. *Wright* v. *Russell*, 3 Wils. 530 ; *Barclay* v. *Lucas*, 1 T. R. 291, note ; *Metcalf* v. *Bruin*, 12 East, 399.

The case of *Dance* v. *Girdler*, 1 New Rep. 34, shows that subsequent formal elections do not constitute a new appointment ; though the case was decided on another point. See also *Hughes* v. *Smith*, 5 Johns. R. 168. Fixing the salary could not affect the bond. It made no alteration in the duties of the office, but merely substituted a permanent compensation for a *quantum meruit*. There is nothing in the case to show that it was not the intention of the surety to continue responsible.

*W. Prescott*, in replying, said that the commencement of the action could not be equivalent to an acceptance of the bond, for after a breach it was too late to accept it. The case of *Monumoi Beach* v. *Rogers*, relates to a ratification of an entry on land.

PARKER C. J. delivered the opinion of the Court to the following effect. In regard to the first question, we should have supposed that in the case, as well of a corporation as of an individual, a paper intended for their benefit and found on their files, would be considered as having been accepted by them ; but it appears that in an action now pending before

31*

Dedham
Bank
*v.*
Chickering.

340

*Suffolk,
April 5th,
1826.*

the Supreme Court of the United States, *Marshall* C. J. held, that the acceptance of a bond similar to the one in question should be proved by the record of a vote of the directors.[1] We think however that the case before us may be decided without touching that principle, for admitting it to be correct, we are nevertheless of opinion that the vote to accept the sureties, and the bond's being in the possession of the president, are a sufficient acceptance of the bond.

The other point made by the defendant is a pretty important one, namely, that the bond should be restricted by the term of the office, so that every election should be considered as the choice of a new officer, and a new bond should be taken. We do not doubt the soundness of the principle. It has been adopted in this commonwealth, and many of the authorities, which are numerous, are cited in *Boston Hat Manufactory* v. *Messinger*, 2 Pick. 223.[1] In some cases where the words would extend to an indefinite period, but where by the recital it appeared that the office was annual, it has been held that the obligation should be understood as referring to an office so limited. We should go even further, and say, that where it appears by the records of a corporation that the office, by their regulations, is an annual one, the bond should be restricted. And all this is founded on the intent of the parties. But the case before us does not seem to be one of that sort. The terms of the bond are general. There is nothing in it to show that a restriction was intended, and nothing in the records or regulations of the bank indicating that the office was annual.[2] We do not think that the reëlections of Chickering prove it to be such; he would have remained in office without a new election. There was

---

[1] The ruling of *Marshall* C. J. upon this point in the Circuit Court was adjudged erroneous, by the Supreme Court, and a new trial was granted on that account. *United States Bank* v. *Dandridge*, 12 Wheat. 64. (6 Peters's Condensed U. States Ct. R. 440.)

See also *Peppin* v. *Cooper*, 2 Barn. & Ald. 431; *Hassell* v. *Long*, 2 Maule & Selw. 363; *Leadley* v. *Evans*, 2 Bingh. 32; *S. C.* 9 Moore, 102, *Union Bank of Maryland* v. *Ridgely*, 1 Harr. & Gill, 432; *S. Carolina Society* v. *Johnson*, 1 M'Cord, 41; *Kennebec Bank* v. *Cooper*, 2 Greenl. 42; *Worcester Bank* v. *Reed*, 9 Mass. R. (Rand's ed.) 268, n. (*a*).

[2] See *Curling* v. *Chalkden*, 3 Maule & Selw. 502.

nothing to make the sureties suppose it was limited to a year, but they must have signed, thinking they should be responsible for so long a period as Chickering should continue to be cashier.

*Bond adjudged forfeited.*[3]

---

[3] See *Dedham Bank* v. *Chickering,* 4 Pick. 314.